IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALTON CANNON<br>a/k/a SHARIF MOZAAR MUSTAFA EL BEY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WILMINGTON POLICE<br>DEPARTMENT, MAYOR JAMES M. BAKER,<br>CHIEF OF POLICE MICHAEL SZCERBA,<br>MILLER and SEVERANCE,<br><br>Defendants. | Civil Action No. 11-136 GMS |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Alton Cannon ("Cannon"), filed this action against the City of Wilmington Police Department, Mayor James M. Baker, Chief of Police Michael Szcerba, and police officers Miller and Severance (collectively the "defendants"), alleging false arrest, false imprisonment, "reckless negligence," "deliberate indifference," and "invidious discrimination." (D.I. 2.) He seeks both compensatory and punitive damages. Cannon appears *pro se*, and the court has allowed him to proceed *in forma pauperis*. (D.I. 4.)

Presently before the court is defendants' joint motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 13.) For the reasons below, the court will dismiss the complaint without prejudice.

### II. JURISDICTION

Though not explicitly stated, the court understands the plaintiff to be raising claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, and selective enforcement. Jurisdiction over these claims is proper under 28 U.S.C. § 1331.

Additionally, Cannon appears to raise a state tort claim for negligence. This claim arises from the same law enforcement encounter already at issue and therefore is "so related to claims in the action within [the court's] original jurisdiction that [it] form[s] part of the same case or controversy." 28 U.S.C. § 1367. The court may exercise its supplemental jurisdiction under 28 U.S.C. § 1367 to hear this state law claim. *Id.*

### III. BACKGROUND

The parties dispute the basic facts underlying this case. In deciding a motion to dismiss, the court generally considers only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). While the court accordingly limits its decision here to these sources of fact, it will set forth the parties' differing accounts below in order to provide a more complete picture of the dispute.

The defendants allege that, at approximately 10:20 p.m. on February 10, 2002, officers Miller and Severance (the "officers") observed Cannon, an African-American male, sitting at a bus stop in Wilmington, Delaware. (D.I. 14 at 2.) The defendants claim that the officers observed what appeared to be a can of beer in Cannon's possession. (*Id.*) The officers then exited their vehicle and approached Cannon in order to investigate further and determine whether he was violating an open container ordinance. (*Id.*) After confirming that the object was, in fact, an open can of beer, the officers stopped Cannon, obtained identification from him, and received

2

word from a Wilmington Police Department data clerk that a warrant existed for Cannon's arrest. (*Id.*) The officers then took Cannon into custody, brought him to the Wilmington Police Department, and issued him a summons for possession of an open container. (*Id.*) Eventually, the officers determined that Cannon was not actually the subject of the warrant and released him after approximately two hours in custody.[1] (*Id.* at 2–3.)

Cannon contends that the officers initially approached him due to racial profiling, (D.I. 42), and that the open container had been left at the bus station by another person. (*Id.* at 63.) He maintains that the officers issued him the open container summons as a "cover-up" after learning that there was no outstanding warrant for him. (*Id.* at 13.) Cannon asserts that the officers did not have probable cause to take him into custody and improperly relied on the "capias or warrant for arrest" information provided by the data clerk. (*Id.* at 4.)

## IV. STANDARD OF REVIEW

The pleadings of a *pro se* litigant are liberally construed, and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As noted above, the court proceeds on the presumption that Cannon brings his claims for false arrest and false imprisonment pursuant to 42 U.S.C. § 1983. Additionally, the court construes Cannon's "invidious discrimination" claim as a § 1983 claim for selective-enforcement.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failing to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is warranted where "it is clear that no relief could be granted under any set of facts that could be

---

[1] The arrest warrant was for an "Alton J. Cannon," born in 1951. (D.I. 2 at 77.)

3

proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). The court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

A well-pleaded complaint, however, must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court conducts a two-part analysis to determine whether dismissal is appropriate. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court accepts all well-pleaded facts as true but may disregard any legal conclusions. *Id.* at 210–11. The court notes, however, that where allegations "are no more than conclusions, [they] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After separating the legal and factual elements, the court asks whether the facts alleged are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## V. DISCUSSION

The plaintiff appears to raise the following claims: Count 1 – False Arrest under 42 U.S.C. § 1983; Count 2 – False Imprisonment under 42 U.S.C. § 1983; Count 3 – "Reckless Negligence"; Count 4 – "Deliberate Indifference"; Count 5 – Selective-enforcement under 42 U.S.C. § 1983. The court first discusses the defendants' contention that the plaintiff's claims are barred by the applicable statute of limitations. The court then examines each claim in turn and,

for the reasons below, finds that the plaintiff has failed to a state any claim upon which relief may be granted. For separate reasons also discussed below, the court further finds that the plaintiff has failed to plead sufficient facts to sustain claims against any of the defendants.

    A.    Statute of Limitations

When determining the applicable statute of limitations for a § 1983 claim, the court looks to the statute of limitations in the state in which it resides. *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000). In Delaware, actions brought under § 1983 are characterized as personal injury actions and are subject to the state's two-year statute of limitations. *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). While state law determines the limitation period, federal law determines the date of accrual of a § 1983 action. *Id.* Under federal law, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the [§] 1983 action." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). Specifically, "[w]hen false arrest is the basis of the § 1983 action, the statute of limitations normally begins to run at the time of arrest." *Ginter v. Skahill*, 298 F. App'x 161, 163 (3d Cir. 2008). The statute of limitations for a false imprisonment claim under § 1983, however, does not begin to run until the alleged false imprisonment ends. *Whitfield v. Wilmington Police Dept.*, No. 06-541-GMS, 2007 WL 2788606, at *4 (D. Del. Sept. 25, 2007).

This subtle difference is important. The defendants argue that Cannon's complaint is barred by the two-year statute of limitations and must be dismissed as a matter of law. (D.I. 14 at 5.) The arrest occurred on the evening of February 10, 2009, and Cannon did not initiate this case until February 11, 2011—seemingly one day after the two-year period passed. It appears, however, that the officers did not release Cannon from custody until the early morning hours of

February 11, 2009. Under the false imprisonment accrual rule, the limitations period did not commence until Cannon was released, meaning that Cannon timely filed his claim on the last possible day. Thus, it appears that Cannon's false arrest and selective-enforcement claims are barred by the two-year statute of limitations, while his false imprisonment claim survives. The court declines to resolve the motion to dismiss on the basis of this timeliness issue. Given the "less stringent standards" the court affords *pro se* litigants, the uncertain application of the statute of limitations in this scenario, and the fact that Cannon's claims are deficient for several alternative reasons, the court will proceed in its analysis.

B.     Counts 1 and 2 – False Arrest and False Imprisonment

The first two counts of the complaint allege false arrest and false imprisonment. (D.I. 2 at 4–19.) In order to state a claim for false arrest, Cannon must allege that there was an arrest and that the officers did not have probable cause to believe he committed the offense for which he was arrested. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995); *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Likewise, a false imprisonment claim in this type of case exists only where the police lack probable cause to make the initial arrest. *See Groman*, 47 F.3d at 636. Both false arrest and false imprisonment claims therefore require Cannon to plead an absence of probable cause.

Probable cause exists if, at the time of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." The court recognizes that a probable cause determination must be made "'on the spot' under pressure and do[es] 'not require the fine resolution of conflicting evidence that a

6

reasonable doubt or even a preponderance standard demands.'" *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975)).

Even viewing the complaint and its attachments in the light most favorable to Cannon, the court finds that he has failed to state a claim upon which relief may be granted with respect to Counts 1 and 2. While Cannon claims he informed the officers that they were "arresting the wrong person," (D.I. 2 at 4), he has pleaded separate facts that directly undercut his position that the arresting officers lacked probable cause. For example, the complaint acknowledges that a third-party "dispatcher" told Miller there was a warrant for Cannon's arrest. (D.I. 2 at 4.) Additionally, a database printout attached to the Complaint shows the outstanding warrants for an "Alton J. Cannon." (*Id.* at 77.) The United States Supreme Court has said "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 803 (1971). Based on Cannon's own allegations, the court cannot find that the officers were unreasonable in mistaking him for this other person.[2] Probable cause therefore existed, rendering Cannon's false arrest and false imprisonment claims devoid of "facial plausibility."

C. Count 3 – Negligence

The court has supplemental jurisdiction over Cannon's state law negligence claim by virtue of the federal claims for false arrest, false imprisonment, and selective-enforcement that were brought under § 1983. 28 U.S.C. § 1367. As noted above, however, the court will dismiss each of these federal claims under Rule 12(b)(6). Accordingly, the court will decline to exercise

---

[2] The name relied upon by the officers matched both Cannon's first and last name—only the middle initial was different. Additionally, Cannon's year of birth and Alton J. Cannon's year of birth differ by only one digit. (D.I. 2 at 77–78.) Finally, Cannon has multiple aliases, which may have served to confuse the issue. For example, he has referred to himself at points in this litigation as Sharif Mozaar Mustafa El Bey.

jurisdiction over Cannon's supplemental state law claim. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . .").

D.   Count 4 – "Deliberate Indifference"

The court is unfamiliar with a Delaware tort cause of action for "deliberate indifference," and Cannon fails to guide the court to any relevant law in support of this claim. With regard to this count, the Complaint does not contain the required "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), and the court is unable "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, even if this were a recognized cause of action, the court would decline to exercise its supplemental jurisdiction over it after dismissing Cannon's § 1983 claims. 28 U.S.C. § 1367(c).

E.   Count 5 – Selective-enforcement

The court construes the complaint as raising claim for selective-enforcement under 42 U.SC. § 1982. (D.I. 2 at 42.) A selective-enforcement claim requires that a plaintiff demonstrate "(1) that he was treated differently from other similarly situated individuals, and (2) 'that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right.'" *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010). In support of this claim, however, Cannon merely asserts that police departments across the nation" are "known for harassing, assaulting, intimidating, shooting, arresting, imprisoning, etc." African-Americans. (D.I. 2 at 43.) These generalized allegations simply do not "allow[] the court to draw the reasonable inference that the

[defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, the court finds that Cannon has failed to state a claim upon which relief may be granted with respect to this count.

F.  Cannon's Claims are Insufficient as to the Named Defendants

Finally, even were the court to find that Cannon pleads sufficient facts to make out a basic claim for relief under § 1983, it could not conclude that Cannon's allegations are enough to allow the case to go forward against the named defendants. Cannon's pleadings fail to address several hurdles that prevent the court from "draw[ing] the reasonable inference that [these defendants] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Officers Miller and Severance are shielded by qualified immunity,[3] the City of Wilmington's municipal liability is limited under § 1983,[4] and both Mayor Baker and Chief of Police Szcerba have limited

---

[3] Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies, the court generally asks whether a constitutional violation occurred and whether that constitutional right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

As discussed above, even limiting its review to Cannon's own pleadings and viewing them in the light most favorable to him, the court cannot say that the officers violated a constitutional right. Moreover, the court finds that, even if a violation did occur, the right was not clearly established. Again, the Supreme Court's has declared "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill*, 401 U.S. at 803. Given this pronouncement, the court finds that it would not have been "clear to a reasonable officer" that arresting Cannon was unlawful under the circumstances.

[4] As an initial matter, the court notes that Cannon attempts to impose "vicarious liability" upon the Wilmington Police Department. (D.I. 2 at 48–49.) The proper party in interest, however, is the City of Wilmington. *See Boyd v. Wilmington Police Dept.*, 439 F. Supp. 2d 343, 345 n.3 (D. Del. 2006). Additionally, even were the court to construe these claims as being properly brought against the City of Wilmington, Cannon has failed to plead sufficient facts to show that a "vicarious liability" claim against the City is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Specifically, the plaintiff has failed to plead any facts demonstrating that the alleged constitutional violations occurred pursuant to City of Wilmington "policy or custom." *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d. Cir. 2010). Indeed, Cannon himself suggests that the arrest was inconsistent with City of Wilmington policy, (D.I. 2 at 34), and appears to rely improperly on a purely *respondeat*

supervisory liability.[5]

## VI. CONCLUSION

For the above reasons, the court will grant the defendants' motion to dismiss. The court, however, will dismiss the complaint without prejudice and give Cannon leave to amend, for "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 U.S. at 236. The court will allow Cannon thirty (30) days to file an amended complaint addressing the deficiencies noted in this Memorandum. Failure to amend the complaint within this timeframe will result in dismissal with prejudice.

Dated: September 27, 2012

CHIEF UNITED STATES DISTRICT JUDGE

---

*superior* theory of liability, *see Kelly*, 622 F.3d at 263 ("Municipalities cannot be held liable under § 1983 based solely upon a theory of *respondeat superior;* rather, the plaintiff must identify a municipal policy or custom that caused his injury . . . To prove liability, the plaintiff must show that the municipal action was the 'moving force' behind the constitutional violation.").

[5] Cannon likewise fails to plead sufficient facts to maintain his vicarious liability claim against Mayor Baker and Chief Szcerba. The Complaint states simply that "James M. Baker – (Mayor) and Michael Szcerzba [sic] (Chief of Police.) Has 'supervisory authority' and bears the (liability) and responsibility for the "conduct" of their "subordinates," that work under them." (D.I. 2 at 49.) This apparent attempt to invoke *respondeat superior* liability is insufficient. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." (internal quotation omitted)).

The court acknowledges that Cannon does claim Mayor Baker and Chief Szcerba personally authorized his arrest, (D.I. 2 at 7), and recognizes that the requisite "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho*, 423 F.3d at 353. This particular assertion, however, is otherwise unsupported in Cannon's 69-page Complaint and seeks merely to recite the elements of the cause of action. The court therefore views it as a conclusory allegation, not entitled to the assumption of truth. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130–31 (3d Cir. 2010) ("Saying that [supervisory defendants] 'specifically sought' to have happen what allegedly happened does not alter the fundamentally conclusory character of the allegation.").

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALTON CANNON<br>a/k/a SHARIF MOZAAR MUSTAFA EL BEY,<br><br>   Plaintiff,<br><br>   v.<br><br>CITY OF WILMINGTON POLICE<br>DEPARTMENT, MAYOR JAMES M. BAKER,<br>CHIEF OF POLICE MICHAEL SZCERBA,<br>MILLER and SEVERANCE,<br><br>   Defendants. | Civil Action No. 11-136 GMS |

**ORDER**

At Wilmington this 27th day of September, 2012, for the reasons set forth in the Memorandum issued this date, IT IS HEREBY ORDERED that:

1. The defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (D.I. 13) is GRANTED to the extent that the plaintiff's Complaint (D.I. 2) is dismissed without prejudice.

2. The plaintiff is ordered to file an amended complaint within thirty (30) days addressing the deficiencies noted by the court, or the Complaint will be dismissed with prejudice.

                      _____
                      CHIEF, UNITED STATES DISTRICT JUDGE

11